HARLEY D. SMITH, as Administrator of the Estate of GERTRUDE D. SMITH, Claimant, *v.* THE STATE OF NEW YORK, Defendant. (Claim No. 22300.)

Court of Claims, July 27, 1933.

*Jackson, Herrick, Durkin & Leet* [*Robert Jackson* and *Ernest D. Leet* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*John L. Campbell, Assistant Attorney-General*, and *Frank Gibbons* of counsel], for the defendant.

RYAN, J. Claimant as administrator of the estate of his deceased wife seeks to recover against the State of New York damages for injuries resulting in her death when she was struck by a Brockway three-ton truck owned by the State and operated by a State employee of the Department of Public Works, Division of Public Highways. The accident occurred between eight-thirty and nine o'clock on the morning of August 19, 1931, in front of the claimant's residence on the highway leading from Jamestown to Mayville.

No allegation is made of any defect in the highway nor of any defect in the truck. The claim is based solely upon the alleged negligence of the driver, and is filed under section 12-a of the Court of Claims Act. A notice of intention to file the claim was received and filed by the Attorney-General and the Superintendent of the Department of Public Works respectively on October 16,

1931. Said notice of intention was not filed with the Court of Claims until May 17, 1932, and on the same date an original and twelve copies of the claim proper were likewise filed with the clerk of the court. Objection is made that this filing is not good. We have recently decided to the contrary. (*Diamond* v. *State of New York*, 147 Misc. 706; *Miller* v. *State of New York*, 148 id. 184.)

Objection is further made that the court has no jurisdiction of the claim because section 12-a confers jurisdiction upon this court " to hear and determine all claims against the State to recover damages for injuries to property or for personal injury caused by the misfeasance or negligence of its officers or employees," and does not specifically provide for a claim for damages for death by wrongful act. This question was apparently not raised in *Miller* v. *State of New York* (231 App. Div. 363, affg. judgment of this court, 137 Misc. 768). Nor do we recall any other trial before this court upon which the identical question was raised including the claim of *Miller* v. *State of New York* (*supra*). It is true, as the counsel for the State contends, that a cause of action for injuries resulting in death is purely statutory and in derogation of the common law, and that a statute granting such cause of action must be strictly construed. Nevertheless we are of the opinion that section 12-a must be read in conjunction with section 12 of the Court of Claims Act which has existed for many years without amendment and under which many death claims against the State have been heard, tried and determined and awards made by this court. Section 12 specifically gives this court jurisdiction " to hear and determine a private claim against the state, including a claim of an executor or administrator of a decedent who left him or her surviving a husband, wife or next of kin, for damages for a wrongful act, neglect or default, on the part of the state by which the decedent's death was caused, which shall have accrued within two years before the filing of such claim." All that section 12-a did was to waive the immunity from liability of the State for the torts of its employees. (*Smith* v. *State of New York*, 227 N. Y. 405, 408; *Jackson* v. *State of New York*, 261 id. 134.)

The motion to dismiss the claim so far as it is based upon objections to our jurisdiction must be denied.

On the morning of the accident, one Fardink, a rural mail carrier proceeding westerly upon his route in a light roadster automobile along the State highway from Ashville toward Mayville, stopped at a point opposite the Smith residence where were located four mail boxes. The highway was of bituminous macadam, seventeen to eighteen feet wide with shoulders between six and

seven feet wide. It ran in a straightaway and was practically level, the grade being a little over one per cent.

Fardink served the first two boxes, advanced his automobile two or three feet and served the remaining two, including the claimant's mailbox. Thereupon he took hold of the wheel and shifting lever, looked up and saw the State's truck coming toward him from the opposite direction. He saw the truck driver give his wheel a turn; he progressed three or four feet along the road when he heard a thump, and just then another automobile came from behind him, passed around him and stopped. He looked back and saw claimant's intestate lying on the shoulder of the road on the same side on which the mailboxes were located. He did not see the impact between the truck and Mrs. Smith.

However, Shaw, next door neighbor to the Smiths, did witness the accident. The mail carrier had previously stopped at Shaw's mail box, located about 200 feet easterly of the point of the accident, and Shaw had just been across the road to get his own mail and was returning home when the squeaking of brakes caused him to look up. He was in front of the truck with the truck coming toward him and Mrs. Smith was between him and the truck. He testified that Mrs. Smith was facing toward the north; that he did not see where she came from; that she was struck by the left side of the front of the truck; that the truck turned to the left and at the moment of impact was traveling about three feet over the center of the highway; that when she was struck she was thrown to the north shoulder. No horn was sounded nor signal given. Mrs. Smith was killed instantly.

Shaw testified that it looked to him as if the driver pulled to the left to avoid hitting Mrs. Smith.

Shaw also saw the third automobile but he was unable to give any clear account of it. The two men and the two women who occupied it were apparently overlooked in the confusion which followed the accident and went on their way and their testimony is not available to aid us in determining just what happened.

There is a conflict of testimony as to whether Mrs. Smith came from her residence on the southerly side of the highway or from the mailboxes on the northerly side. Fardink is positive that she was not at the mailboxes when he served them. Shaw had been talking with her at her home only a few minutes before. Mr. Smith testified that his mail was brought in from the box subsequent to his arrival home after the accident.

On the other hand, Kelsey, the truck driver, testified that Mrs. Smith came out from behind Fardink's car four or five feet from him, and denied that he had said immediately after the accident that Mrs. Smith ran out from her residence directly in front of him.

We believe that Mrs. Smith did come from the southerly side of the highway. She saw or should have seen the truck approaching from her left and attempted to cross in front of it to get her mail from the box. It is possible that the third automobile coming from her right in some way entered into the situation. Mrs. Smith may have been guilty of contributory negligence. That it is unnecessary to decide because the claimant has failed to establish the negligence of the State of New York or its employees. Although Kelsey testified that he was driving thirty to thirty-five miles per hour and did not sound his horn, because as he said he did not have time, we do not under all the circumstances find him guilty of negligence and the claim must be dismissed upon the merits.

BARRETT, P.J., concurs.